## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

| | |
|---|---|
| CLARENCE G. NELSON, Jr., and VALORA L. NELSON, | |
| Plaintiffs, | No.   15-CV-4077-CJW |
| vs. | **ORDER** |
| WILLIAM E. BITTERS (d/b/a United Financial Information Services), | |
| Defendant. | |

---

## I.    INTRODUCTION

This matter is before the Court pursuant to defendant's Motion for Summary Judgment (Doc. 41), plaintiffs' Motion to Dismiss Without Prejudice (Doc. 46), and plaintiffs' Motion for Leave of Court for Plaintiffs to Designate Experts Out of Time (Doc. 47).   On January 13, 2017, the Court heard argument on the motions.   During the hearing, the Court orally denied plaintiffs' Motion for Leave of Court for Plaintiffs to Designate Experts Out of Time (Doc. 47), but will explain in more detail the basis for its ruling herein.   The Court now deems all motions fully submitted.

For the reasons that follow, the Court: (1) grants defendant's Motion for Summary Judgment (Doc. 41); (2) denies plaintiffs' Motion to Dismiss Without Prejudice (Doc. 46); and denies plaintiffs' Motion for Leave of Court for Plaintiffs to Designate Experts Out of Time (Doc. 47).[1]

---

[1] Defendant moved to strike plaintiffs' resistance (Doc. 48) because one of the documents plaintiffs attached to the resistance contained personal identifiers in violation of Federal Rule of Civil Procedure 5.2 and Local Rule 10(h).   (Doc. 49).   Plaintiffs responded by filing a motion to seal their resistance.   (Doc. 51).   The Court entered an order denying plaintiffs' motion to seal and instructing plaintiffs to forthwith submit to the Clerk of Court a redacted page 22 (the

## II.   PROCEDURAL BACKGROUND

On September 21, 2015, plaintiffs filed a five-count complaint against defendant and Robert W. Boland.   (Doc. 2).   Count I alleged a breach of trust.   Count II alleged gross negligence.   Count III alleged breach of contract.   Count IV alleged federal securities violations, and Count V alleged state securities violations.

On November 3, 2015, defendant Bitters filed a motion to dismiss the complaint. (Doc. 11).   On November 24, 2015, defendant Boland filed a motion to dismiss the complaint.   (Doc. 15).

On December 8, 2015, plaintiffs filed a motion for leave to file an amended complaint, with a proposed amended complaint attached.   (Doc. 16).   On the same day, plaintiffs filed a resistance to both motions to dismiss.   (Doc. 17).

On December 22, 2015, defendants filed a joint resistance to plaintiffs' motion for leave to file an amended complaint.   (Doc. 20).

On January 6, 2016, the Court granted plaintiffs' motion for leave to file an amended complaint.   (Doc. 21).   In its order, the Court held that defendants' pending motions to dismiss would be deemed to apply to plaintiffs' amended complaint, but indicated the parties could file supplemental briefs on or before January 25, 2016.

On the same day, plaintiffs filed their amended complaint.   (Doc. 22).

On February 9, 2016, the Court adopted the parties' Proposed Scheduling Order and Discovery Plan.   (Doc. 25).   The Scheduling Order provided that plaintiffs' deadline for disclosing expert witnesses was May 6, 2016.   (*Id.*, at 1).   It further provided that the "trial ready date" was December 12, 2016.   (*Id.*).   By consent of the

---

only page containing personal identifiers) so the Clerk could substitute it for the page containing personal identifiers.   The Court checked with the Clerk of Court on January 17, 2017, and learned that plaintiffs did submit a redacted page 22 on Friday, January 13, 2017.

parties, this case was assigned to a United States Magistrate Judge for final disposition. (Doc. 25). The Court set this case for a bench trial on December 19, 2016. (Doc. 26, at 1).

On March 18, 2016, the Court granted defendant Boland's motion to dismiss, but denied defendant Bitters' motion to dismiss. (Doc. 27).

On April 6, 2016, plaintiffs filed an unresisted motion to amend the scheduling order to extend the deadline to May 26, 2016, for filing motions to amend the pleadings. (Doc. 29). The next day the Court granted plaintiffs' motion. (Doc. 30).

On May 26, 2016, plaintiffs filed a second unresisted motion to amend the scheduling order to extend the deadline again for filing motions to amend the pleadings, this time asking the deadline be extended to June 27, 2016. (Doc. 31). The Court granted plaintiffs' motion the following day. (Doc. 32).

On June 27, 2016, plaintiffs filed a third unresisted motion to amend the scheduling order to extend the deadline for filing motions to amend the pleadings, this time requesting an extension to July 25, 2016. (Doc. 33). The following day the Court granted plaintiffs' motion. (Doc. 34). Plaintiffs never have since filed a motion to amend the pleadings.

On July 21, 2016, defendant filed a motion to continue the trial. (Doc. 36). Plaintiffs filed a response in which they consented to the continuance of the trial date, so long as other deadlines were also continued. (Doc. 37). On August 2, 2016, the Court held a telephonic hearing on the pending motion to continue the trial. (Doc. 39). The following day the Court entered an order continuing the trial to February 21, 2017. (Doc. 40). The Court granted an extension of the deadline for conducting discovery, but denied plaintiffs' request to extend deadlines for amending pleadings or disclosing expert witnesses, and explained why.

> Regarding the request to extend discovery deadlines, the Court finds that the parties have acted with reasonable diligence and have shown good cause for extending some deadlines in this case. As noted, the Court has extended the deadlines for filing motions to amend pleadings and add parties on three occasions and will not do so again. Either party may, of course, file a motion seeking leave to add parties or amend pleadings out of time, setting forth the justification for the untimely motion, and the Court will consider it. Similarly, the Court will not extend the deadlines for expert witness disclosures. The deadlines for those disclosures have long since passed; and, during the hearing, the parties were unable to articulate any reason why they were unable to comply with those deadlines. Again, either party may file a motion seeking leave to disclose expert witnesses out of time, setting forth the justification for the untimely motion, and the Court will consider it.

(Doc. 40, at 4). The Court did, however, extended the deadlines for completing discovery and for filing dispositive motions. (*Id*.).

On November 21, 2016, defendant filed a timely motion for summary judgment. (Doc. 41). Pursuant to Local Rule 56:

> **b.   Resisting Party's Documents.**   A party resisting a motion for summary judgment must, within 21 days after service of the motion, file contemporaneously all of the following:
> 1. A brief that conforms with the requirements of Local Rule 7.e in which the resisting party responds to each of the grounds asserted in the motion for summary judgment;
> 2. A response to the statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact, filed as an electronic attachment to the brief under the same docket entry;
> 3. A statement of additional material facts that the resisting party contends preclude summary judgment, filed as an electronic attachment to the brief under the same docket entry; and
> 4. An appendix that conforms with the requirements of section "e" of this rule, filed as an electronic attachment to the brief under the same docket entry.
>
> A response to an individual statement of material fact that is not expressly admitted must be supported by references to those specific pages,

paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the resisting party's refusal to admit the statement, with citations to the appendix containing that part of the record. The failure to respond, with appropriate citations to the appendix, to an individual statement of material facts constitutes an admission of that fact.

Each individual statement of additional material fact must be concise, numbered separately, and supported by references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions, exhibits, and affidavits that support the statement, with citations to the appendix containing that part of the record.

**c.    Unresisted Motion.**    If no timely resistance to a motion for summary judgment is filed, the motion may be granted without prior notice from the court. If a party does not intend to resist a motion for summary judgment, the party is encouraged to file a statement indicating the motion will not be resisted.

LR 56(b) & (c).

Allowing for the three-day mailing rule (which no longer exists for documents filed electronically), plaintiffs' resistance to the motion for summary judgment was due December 15, 2016. On December 22, 2016, the Court entered a text order, noting that plaintiffs had failed to timely file a resistance, pointed out Local Rule 56(c), and indicated that if plaintiffs intended to resist the motion for summary judgment, they were, by December 30, 2016, to "file a motion seeking leave to file an untimely resistance, showing cause for failing to file a timely resistance." (Doc. 42).

On December 28, 2016, plaintiffs filed an unresisted motion for an extension of time to file a resistance to defendant's motion for summary judgment, asking for a two-week extension and citing the holiday season as the reason for needing additional time. (Doc. 43). Plaintiffs did not file a motion for leave to file a resistance out of time, as ordered, nor did their motion provide any explanation for their failure to file a timely

resistance. Nevertheless, on January 4, 2017, the Court granted in part plaintiffs' motion, extending to January 6, 2017, the deadline for filing a resistance. (Doc. 44).

On January 6, 2017, plaintiffs filed the following with the Court: a two-page "Resistance" to the motion for summary judgment (Doc. 45); a Motion to Dismiss Without Prejudice (Doc. 46); a Motion for Leave of Court for Plaintiffs to Designate Experts Out of Time (Doc. 47); and a brief purportedly in support of each of these motions (Doc. 48).

As noted, on January 13, 2017, the Court held a telephonic hearing on all pending motions. (Doc. 55). During the hearing, the Court pointed out that plaintiffs' brief in resistance to defendant's motion for summary judgment (Doc. 48) was identical to their resistance to defendant's motion to dismiss filed in December 2015. Plaintiffs replied that they had refiled that prior brief in error and had actually prepared a resistance to the motion for summary judgment. The Court therefore granted plaintiffs leave to file their resistance to the motion for summary judgment out of time, which they did. (Doc. 54). The Court notes that plaintiffs did not provide a Statement of Additional Material Facts. The Court further granted defendant until Wednesday, January, 18, 2017, leave to file a reply brief, if he chose. On January 18, 2017, defendant filed a reply brief. (Doc. 56).

### III. PLAINTIFFS' MOTION FOR LEAVE OF COURT FOR PLAINTIFFS TO DESIGNATE EXPERTS OUT OF TIME

Plaintiffs seek leave of the Court to designate expert witnesses out of time. As noted above, plaintiffs' deadline for designating expert witnesses was May 6, 2016, some eight months ago. To permit plaintiffs to designate experts at this late date would require the Court to modify its scheduling order. A scheduling order may be modified only for good cause and with the judge's consent. FED. R. CIV. P. 16(b)(4). Rule 16,

however, does not govern where, as here, a motion to extend deadlines is made after the deadline has passed. Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure provides that "the court may, for good cause," extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect." Rule 6 applies to "any time period specified in [the Federal Rules of Civil Procedure], [and] in any local rule or court order . . .." FED. R. CIV. P. 6.

The Federal Rules of Civil Procedure do not define "excusable neglect." In *Pioneer Inv. Servs. Co. v. Brunswick Assos. Ltd. P'ship*, 507 U.S. 380, 392 (1993), the Supreme Court found that "'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." In determining whether excusable neglect exists, a court therefore must consider "all relevant circumstances surrounding the party's omission." *Id.,* at 395. *See also Fink v. Union Central Life Ins. Co.*, 65 F.3d 722, 724 (8th Cir. 1995) (citing *Pioneer*, 507 U.S. at 395). These circumstances include:

(1) The danger of prejudice to the non-moving party;

(2) The length of delay and its potential impact on judicial proceedings;

(3) The reason for the delay, including whether it was within the reasonable control of the movant; and

(4) Whether the movant acted in good faith.

*Treasurer, Trustees of Drury Indus., Inc. Health Care Plan and Trust v. Goding*, 692 F.3d 888, 893 (8th Cir. 2012) (citing *Pioneer*). The four factors do not, however, carry equal weight; "the excuse given for the late filing must have the greatest import." *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000).

The Court takes seriously the discovery deadlines it imposes so as to "secure the just, speedy, and inexpensive determination of every" case. FED. R. CIV. P. 1. Parties are expected to adhere to the deadlines imposed by the Court, especially when the parties

themselves propose the deadlines. Courts should appreciate the difficulties and stresses of litigation practice where attorneys juggle multiple cases which impose many deadlines. At the same time, trial attorneys must develop practices to track deadlines immediately when they are imposed so that the deadlines are not missed through oversight.

In evaluating the relevant circumstances in this case, the Court concludes that plaintiffs have failed to demonstrate good cause or excusable neglect for failing to timely designate an expert. Plaintiffs indicated that "depositions of the parties were not held until September 23, 2016," and therefore "inadequate information was available to obtain and confirm an expert with sufficient opinions and conclusions relevant hereto, all of which is compounded by Plaintiff Clarence Nelson's poor memory." (Doc. 47, at 1). Plaintiffs also indicate that their "[c]ounsel has conferred with potential experts in connection with the strength of [plaintiff Clarence Nelson's] memory affecting his testimony and have stated that they now have issues rendering expert opinions without more facts." (Doc. 54, at 13). Plaintiffs provided no explanation of what additional information would be necessary to designate expert witnesses, why this information was not discoverable earlier, what efforts are currently underway to obtain this additional information, or even, for that matter, how much more time plaintiffs are requesting to designate and disclose their experts. Moreover, plaintiffs have failed to explain how Clarence Nelson's allegedly failing memory impacts in any way their ability to retain an expert to opine as to whether defendant met the standard of care expected of financial advisors.

This case is set for trial in approximately 30 days. If the Court permitted plaintiffs more time to designate and disclose experts, defendant will be required to depose the expert(s), and presumably retain and designate his own expert(s). Any extension of time for plaintiffs to designate experts, therefore, will necessarily require a continuance of the trial.

Turning to the factors for granting a motion to modify a scheduling order after the deadline has passed, the Court finds almost every factor weighs against granting plaintiffs' motion. The length of the delay in disclosure weighs against granting plaintiffs' motion. Plaintiffs' deadline for expert disclosure was May 6, 2016. More than eight months have passed after the deadline. Even were the Court to consider plaintiffs' explanation that they needed to depose plaintiff Clarence Nelson before designating an expert, (the logic of which is lost on the Court), that occurred more than three months ago.

The reason for the delay is weak; it constitutes "garden-variety attorney inattention." *Lowry*, 211 F.3d at 464. Plaintiffs provide no real explanation for why they could not identify and designate an expert by the deadline, and provide no further explanation for why, eight months after the deadline passed, they have not been able to do so. Plaintiffs have provided no information to the Court regarding what efforts they have made since bringing this suit to locate and retain an expert to establish defendant's standard of care. Plaintiffs' explanation that they did not realize until plaintiff Clarence Nelson's deposition that he has memory problems provides no logical causal link for why plaintiffs could not have retained and disclosed an expert to testify about defendant's alleged professional negligence. During the hearing on the motions, counsel for plaintiffs candidly admitted that "this hasn't been handled well," and "it didn't get the attention it should have." Were the Court to find excusable neglect under these circumstances, "it is hard to fathom the kind of neglect that . . . would not [be] deem[ed] excusable." *Lowry*, 211 F.3d at 464. *See also Mullen v. Heinkel Filtering Sys., Inc.*, 2013 WL 4766785, *4 (N.D. Iowa Sept. 4, 2013) (unpublished) (denying motion to extend expert disclosure deadline when it was missed through oversight by counsel).

Finally, the Court finds plaintiffs' counsel have acted in good faith and "not in an attempt to delay the process or escape the requirements of the rules." *Larson v. Farmers Co-op Elevator of Buffalo Ctr., Iowa*, 58 F. Supp.2d 1013, 1017 (N.D. Iowa 1999).

On balance, the Court finds that plaintiffs have not shown good cause or excusable neglect for modifying the scheduling order to permit them to designate expert witnesses eight months after the deadline and 30 days before trial. Plaintiffs have failed to show any justification for extending the deadline for designating expert witnesses. Accordingly, the Court denies plaintiffs' motion.

## IV.    PLAINTIFFS' MOTION TO DISMISS WITHOUT PREJUDICE

Plaintiffs move the Court to dismiss their suit without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). That rule provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." "The purpose of Rule 41(a)(2) is primarily to prevent voluntary dismissals which unfairly affect the other side." *Paulucci v. City of Duluth*, 826 F.2d 780, 782 (8th Cir. 1987). "Courts generally will grant dismissals where the only prejudice the defendant will suffer is that resulting from a subsequent lawsuit." *Metro. Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co.*, 793 F. Supp. 205, 206 (D. Minn. 1992) (quotation omitted).

Therefore, the Court is not required to dismiss a claim upon request, but, rather, must determine whether doing so will prejudice defendant in this case. Historically, the Eighth Circuit has looked to four factors in deciding whether a court should grant a Rule 41(a)(2) motion, as follows: (1) the defendant's effort and the expense involved in preparing for trial; (2) excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action; (3) insufficient explanation of the need to take a dismissal; and (4) the fact that a motion for summary judgment has been filed by the defendant. *Paulucci*, 826 F.2d at 783 (quoting *Pace v. Southern Express Co.*, 409 F.2d 331, 334

(7th Cir. 1969)).   The Eighth Circuit has more recently instructed courts to take a variety of factors into account: "a court should consider factors such as whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendants."   *Thatcher v. Hanover Ins. Group, Inc.*, 659 F.3d 1212, 1213-14 (8th Cir. 2011) (quoting *Hamm v. Rhone–Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999)).   Furthermore, "it is inappropriate for a plaintiff to use voluntary dismissal as an avenue for seeking a more favorable forum."   *Id*. at 1214 (citing *Cahalan v. Rohan*, 423 F.3d 815, 818 (8th Cir. 2005)).   It is an error for a district court to dismiss an action without first addressing whether the motion is an improper forum-shopping measure.   *Id*. at 215.

Plaintiffs here argue that they "are not forum shopping or seeking any prejudicial advantage over Defendant for dismissal without prejudice."   (Doc. 54, at 15). Plaintiffs argue that they did not delay proceedings in this case "on the chance that Plaintiff Clarence Nelson's memory would fail or how that would impact further investigation on account on it."   *Id*.   Plaintiffs assert "[t]here is no waste of judicial time or effort if the motion is granted, and the intention is not for a strategic advantage of any kind."   *Id*.   Finally, plaintiffs speculate that a lawsuit in another federal court against defendant for alleged similar acts "may lead to some necessary discovery."   *Id*.

The Court finds dismissal without prejudice would be inappropriate here. Plaintiffs have provided no justification for their motion to dismiss without prejudice other than that they have not been able to develop a viable case through discovery.   They offer nothing but speculation that litigants in another case against defendant in another district may be able to develop evidence that could help them in this case.   Plaintiffs have offered no explanation of just what that discovery would entail or why they have been unable through their own discovery efforts to uncover evidence to support their

claims. Moreover, the Court notes that plaintiffs filed their motion to dismiss within close proximity to the eve of trial (scheduled for February 21, 2017), and only after defendant filed a motion for summary judgment. As previously noted, plaintiffs have not diligently prosecuted this case, which is illustrated by their failure to timely designate experts. Contrary to plaintiffs' assertion that judicial resources have not been wasted, the Court notes that it has held two hearings and this is the fourth substantive order it has entered. Finally, defendant has expended significant resources moving to dismiss the complaint, conducting discovery, moving for summary judgment, and preparing for trial. It would be inappropriate to allow plaintiffs to walk away from the lawsuit they brought against defendant with the threat hanging over defendant's head that they may someday refile this lawsuit against him, again, and cause him to expend money and time once again to fight it. The Court does not find, however, that plaintiffs seek to dismiss their suit as a means of forum shopping.

Accordingly, for the reasons set forth above, the Court denies plaintiffs' motion to dismiss without prejudice (Doc. 46).

## V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for entry of summary judgment, arguing that plaintiffs' claims are barred by the statutes of limitations and on the ground that plaintiffs have failed to designate an expert on the claim of professional negligence. The Court finds summary judgment appropriate.

### A. Findings of Fact

In a nutshell, this lawsuit arises out of a $200,000 loan by plaintiffs to a John L. Henry, Treo Engineering, Inc., and Treo Engineering Company, JSJ Manufacturing, Inc., on March 27, 2008 (the Henry Loan). Plaintiffs allege defendant, acting in his capacity as a financial advisor, solicited plaintiffs to make the Henry Loan, which Henry

never repaid. Plaintiffs sued Henry et al., and obtained a judgment against those defendants in 2012. (Doc. 22, at 4, ¶17). But John Henry never paid any money on the judgment rendered of $220,000. Plaintiffs have since filed this law suit seeking compensation from defendant for their losses in relation to the failed Henry Loan. The following material facts are undisputed unless noted otherwise.

Clarence Nelson (Nelson) was born in Omaha, Nebraska, and has lived his entire life there. After graduating high school, Nelson began working for Union Pacific Railroad (Union Pacific) in Omaha, where he worked his entire life before retiring in 1988. During that time, Nelson accumulated Union Pacific stock.

Nelson met defendant in 1988, after Nelson retired from Union Pacific and before Nelson got married in 1998. Defendant has a Bachelor's Degree and a Master's Degree in Business from the University of Iowa. Defendant is a Certified Financial Planner, licensed in both Iowa and Nebraska. He took examinations to be licensed as a Certified Financial Planner and Certified Senior Advisor, and also took examinations in relation to insurance and annuity products. Defendant conducts business from his Iowa home and office and meets with clients in various locations in Iowa and Nebraska. Most of the interactions between Nelson and defendant were conducted in person in Omaha, Nebraska. Nelson has never been to defendant's office or home in Iowa. Nelson has never used the internet or looked at defendant's website.

In 1998, Nelson married Valora Nelson. They maintain a joint bank account in Omaha. Nelson has always signed his own checks and managed his own finances. He has always been confident in his ability to manage his own finances and make his own financial decisions.

In February 2006, Nelson redeemed all of his stock certificates for cash in the amount of $231,989.56 and deposited the funds in his Omaha bank account. That same year, defendant first told Nelson about John Henry. Henry was a resident of Nebraska.

Henry was one of defendant's clients.   Defendant has received at least one commission or payment from Henry in the past.   Defendant received adequate financial information from both Nelson and Henry that an unsecured loan, to Henry, would be a reasonable investment for Nelson.[2]   Nelson agreed to make an unsecured $200,000 loan to Henry.

Defendant drafted a promissory note for the transaction between Nelson and Henry.   Henry executed the promissory note on March 20, 2008.   The promissory note provided that Henry agreed to repay Nelson $200,000 plus interest in the amount of $20,000, on or before September 25, 2008.   The promissory note was drafted, signed, and notarized in Nebraska.   The promissory note reflects a notarization of "Douglas County, NE." (Doc. 22-2).   In an affidavit signed by counsel, plaintiffs allege the promissory note was drafted by defendant in Sioux City, Iowa, and taken with him to Nebraska to have John Henry sign it.   (Doc. 48-1, at 5 ¶6).   That affidavit provides no citation to any record to support this assertion and the Court will therefore disregard it.[3] Plaintiffs further assert, twice more, that defendant drafted the promissory note in Iowa. (Doc. 48-2, at 1; Doc. 54, at 6.).   Plaintiffs cite no evidence except for a deposition in which defendant denied that assertion.   (Doc. 54, at 6).   The deposition records defendant testifying that he prepared the promissory note in Omaha, Nebraska, in his Comfort Inn & Suites office.   (Doc. 41-4, at 98 (23:3–24:24)).   No other evidence supports plaintiffs' assertion.   Therefore, the Court finds there is no genuine issue of

---

[2] *See* Doc. 48-1, at 13: Requests for admission 42 & 43 propounded by plaintiffs to defendant.

[3] Federal Rule of Civil Procedure 56(c) requires that an affidavit filed in support of, or in opposition to, a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).   *See also Postscripts Enterprises v. City of Bridgeton*, 905 F.2d 223, 226 (8th Cir. 1990) (holding that affidavit containing only conclusory statements of plaintiff's attorney was procedurally insufficient response to defendant's summary judgment motion and thus would be disregarded in determining appropriateness of summary judgment).

material fact as to the location where the promissory note was drafted, signed or notarized, and conclude that it was drafted, signed and notarized in Nebraska.

On March 27, 2008, Nelson wrote a check for $200,000 payable to Henry. Nelson prepared and signed the check in Nebraska, and the check was drawn on Nelson's Omaha bank account. Nelson did not make any loan to defendant or write any check to defendant. Nelson obtained the funds for the Henry Loan by taking a loan against his annuity contract he purchased with the proceeds from the sale of his Union Pacific stock. Nelson had taken other loans from his annuity for unrelated reasons, such as purchasing pickup trucks. Nelson's wife was unaware of and uninvolved in the Henry Loan.

Nelson made the loan to Henry with expectations, of course, that Henry would repay the loan. But Henry did not repay the loan on September 25, 2008, when it was due. When defendant became aware that Henry had not repaid the loan, he tried to contact Henry to get some of the loan repaid. Henry continued to assure defendant that Henry would make a payment and make good on the loan. Based on these representations, defendant suggested to Nelson that Nelson hold off on enforcement in an attempt to receive payment. On February 25, 2010, Nelson executed a Power of Attorney, appointing defendant as an agent for Nelson for purposes of collecting the Henry Loan. The power of attorney was drafted by an Omaha attorney and signed and notarized in Nebraska.[4]

In 2011, defendant helped Nelson hire an attorney, Aaron Rodenburg, to take legal action against Henry. On January 26, 2011, defendant and Nelson met with Rodenburg in his Council Bluffs, Iowa, office. Nelson signed an attorney fee contract with

---

[4] Plaintiffs assert the power of attorney was drafted by defendant in Iowa and signed in Carter Lake, Iowa. (Doc. 54, at 6). In his deposition, defendant explained that he was provided the power of attorney by an attorney in the Travel and Transport building on 72nd Street. (Doc. 48-1, at 27). That building is located in Omaha. The document itself shows it was signed and notarized in Nebraska. (Doc. 22-5, at 2).

Rodenburg. Nelson expected Rodenburg to take legal action against Henry, knowing that defendant was not an attorney and was unable to take legal action against Henry for Nelson. Rodenburg also advised Nelson that Nelson might have a claim against defendant. Nelson signed an "informed consent" document acknowledging that Rodenburg had provided him that advice. In April 2011, defendant sent an email to Rodenburg stating "I made a mistake in trusting this man [Henry], usually I am a very good judge of character."

On May 6, 2011, Rodenburg filed suit against Henry on Nelson's behalf in Nebraska state court. Nelson was aware of the suit and actions Rodenburg was taking to recover his money. Nelson became aware that Rodenburg obtained a judgment against Henry and his companies for the amount of money Nelson lent Henry. Rodenburg advised Nelson that he needed an additional $500 to collect on the judgment, but Nelson does not recall paying this amount or whether Rodenburg took efforts to collect on the judgment.

Defendant did not receive anything of value in relation to the Henry Loan. There is no evidence defendant himself received any proceeds from the Henry Loan.

## B. Summary Judgment Standard

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2016). A movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"An issue of material fact is genuine if it has a real basis in the record[,]" *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question[,]" *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing version of the truth at trial." *Anderson*, 477 U.S. at 248-49 (internal quotation marks and citation omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88 (internal citation omitted). *See also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party- as long as those facts are not so 'blatantly contradicted by the record … that no reasonable jury could believe' them.") (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A

court does "not weigh the evidence or attempt to determine the credibility of witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather, a "court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## C.     Discussion

Defendant argues that plaintiffs' claims are barred by the statutes of limitations. Defendant argues that equitable estoppel does not apply here to excuse plaintiffs' failure to bring suit within the statutes of limitations because there is no evidence to support application of the equitable estoppel doctrine. Finally, defendant argues that plaintiffs' claims against him are for professional negligence, and plaintiffs cannot maintain that claim because they have failed to designate an expert witness to establish that defendant's conduct fell below the applicable standard of care. The Court will address each of these arguments in turn. All of these arguments require a determination of which state's law applies to this conflict, however, so the Court will decide that issue first.

### 1.     Conflict of Law

Before applying any conflict-of-law rules, the Court must determine whether or not there is a "true conflict" between the laws of the two states at issue because if there is no such "true conflict," then no choice of law is required. *See Bacon v. Liberty Mut. Ins. Co.*, 688 F.3d 362, 366 (8th Cir. 2012) (concluding that no choice of law analysis is necessary where there was no "true conflict" between Iowa and Nebraska law); *Modern Equip. Co. v. Continental Western Ins. Co., Inc.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004) ("If there is not a true conflict between the laws of Nebraska and Iowa on the pertinent issue, then no choice-of-law is required."). Defendant asserts a conflict exists regarding the statute of limitations applicable to the dispute, and argues that Nebraska

law should apply.    Plaintiffs have not disputed defendant's contention that the laws of the two states are in "true conflict" and argue that Iowa law should apply.    The Court finds there is a true conflict in the laws of the states at issue regarding the length of the applicable statutes of limitations.    Therefore, the Court turns to the question of what state's law should apply.

In a diversity action such as this, to determine what state's law applies, the Court must use the choice-of-law rules of the forum state, in this case, Iowa.    *See*, *e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (the conflict-of-laws rules to be applied by a federal court are the rules of the forum state, because "[o]therwise the accident of diversity of citizenship would constantly disturb equal administration of justice in coordinate state and federal courts sitting side by side"); *H & R Block Tax Servs. L.L.C. v. Franklin*, 691 F.3d 941, 943 (8th Cir. 2012) ("'Federal courts sitting in diversity apply the choice-of-law rules of the forum state.'") quoting *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009)).

Regarding Iowa's conflict-of-laws rules, the Iowa Supreme Court has explained:

> Iowa has abandoned the *lex loci delicti* rule in which the law of the place of injury governs every issue in a tort action. We now follow the Restatement [ (Second) of Conflict of Laws]'s "most significant relationship" methodology for choice of law issues.    *Cameron v. Hardisty*, 407 N.W.2d 595, 597 (Iowa 1987); *Berghammer v. Smith*, 185 N.W.2d 226, 231 (Iowa 1971).    The theory behind this approach is that rather than focusing on a single factor, "the court of the forum should apply the policy of the state with the most interest in the litigants and the outcome of the litigation." *Fuerste v. Bemis*, 156 N.W.2d 831, 834 (Iowa 1968).

*Veasley v. CRST Int'l, Inc.*, 553 N.W.2d 896, 897 (Iowa 1996).    The Iowa Supreme Court looks to the Restatement (Second) Conflict of Laws for guidance on conflict issues. *Harris v. Clinton Corn Processing Co.*, 360 N.W.2d 812, 814 (Iowa 1985).    In general:

> (1)    The forum will apply its own statute of limitations barring the claim.

> (2) The forum will apply its own statute of limitations permitting the claim unless:
>   (a) maintenance of the claim would serve no substantial interest of the forum; and
>   (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

Restatement (Second) of Conflict of Laws, § 142 (1988). *See also Washburn v. Soper*, 319 F.3d 338, 341 (8th Cir. 2003) (concluding that the Iowa Supreme Court would adopt the exceptions set forth in the Restatement (Second) of Conflict of Laws, §142(2)).

In reviewing the facts of this case, the Court concludes that it should apply Nebraska law as that state has the most significant relationship to the parties and the occurrence. Plaintiffs are residents of Nebraska. Nelson was employed in Nebraska, banked in Nebraska, and withdrew the funds involved in the loan from a Nebraska bank. Henry was a Nebraska resident. The promissory note reflecting the Henry loan was drafted, signed, and notarized in Nebraska. Most of the interactions between Nelson and defendant were conducted in person in Omaha, Nebraska. Nelson has never been to defendant's office or home in Iowa. Nelson obtained a judgment against Henry in Nebraska state court. The only connection to Iowa in this case is that defendant lived and had an office in Iowa, and Nelson's lawyer had his office in Iowa.

Plaintiffs argue that Iowa law should apply because "the policies and practices of regulators over the home state insurance commissioner and state banking and securities regulators would be greater in Iowa" and "the State of Iowa should have a greater interest in the justified expectations of all customers of financial planners and insurance agents in their headquartered state, than a secondary state that a financial advisor may do business in." (Doc. 54, at 5).

Plaintiffs also opine that "it would be easier for this court to determine and apply Iowa law as the court sits in Iowa, including equitable estoppel spawning from acts mostly having occurred in the State of Iowa." *Id*. The Court finds this argument unpersuasive. When all of the relevant conduct took place in Nebraska, and a Nebraska citizen is the plaintiff, the fact defendant was licensed in Iowa is of secondary importance to the much more significant relationship that the parties and the occurrence have to the State of Nebraska. Moreover, this Court is as able to determine and apply Nebraska law as it is to determine and apply Iowa law. Finally, although plaintiffs argue that acts occurred in Iowa that led to a claim of equitable estoppel, they cite to no acts and, as related below, the Court finds no acts to support a claim of equitable estoppel.

Accordingly, the Court will apply Nebraska law to this case.

## 2.      *Plaintiffs' Claims are Time Barred*

In plaintiffs' Amended Complaint, they assert five causes of action: Breach of Trust, Gross Negligence, Breach of Contract, Federal Securities Violations, and State Securities Violations. (Doc. 22). Defendant argues the statute of limitations bar plaintiffs' claims. To determine the applicable statute of limitations, the Court must determine what claims plaintiffs have brought. Defendant argues that plaintiffs' "causes of action" are not all separate claims, but, rather, several theories of recovery, citing *Poppert v. Dicke*, 747, N.W.2d 629 (Neb. 2008). (Doc. 41-1, at 7). In *Poppert*, the court explained the difference between causes of action and claims:

> A cause of action consists of the fact or facts which give one a right to judicial relief against another; a theory of recovery is not itself a cause of action. Thus, two or more claims in a complaint arising out of the same operative facts and involving the same parties constitute separate legal theories, of either liability or damages, and not separate causes of action. Whether more than one cause of action is stated depends mainly upon (1)

> whether more than one primary right or subject of controversy is presented, (2) whether recovery on one ground would bar recovery on the other, (3) whether the same evidence would support the different counts, and (4) whether separate causes of action could be maintained for separate relief.

*Poppert*, 747 N.W. 2d at 566-67 (internal footnotes omitted). With this test in mind, the Court recognizes that plaintiffs have, in their first two causes of action, asserted various versions of a professional negligence or fraud cause of action, in their third cause of action a breach of contract claim, and their last two claims are statutory. The applicable statute of limitations for negligence or fraud in Nebraska is four years. NEB. REV. STAT. §25-207. The statute of limitations for professional negligence is two years after the alleged act or omission occurred. NEB. REV. STAT. §25-222. The statute of limitations for an oral contract is similarly four years. NEB. REV. STAT. §25-206. The statute of limitations for a written contract is five years. NEB. REV. STAT. §25-205. The statute of limitations for state securities violations is three years "after the contract of sale or the rendering of investment advice." NEB. REV. STAT. §8-1118(4). The applicable statute of limitations for federal securities fraud provides:

> (a) Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues.
> (b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws … may be brought not later than the earlier of—
> (1) 2 years after the discovery of the facts constituting the violation; or
> (2) 5 years after such violation.

28 U.S.C. § 1658. Regarding Section 1658(b), the United States Supreme Court held that "a cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—

whichever comes first." *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 637 (2010) (citing 28 U.S.C. § 1658(b)(1)).

In general, at the latest, the limitations period for plaintiffs' causes of action began when Henry defaulted on the loan, on September 25, 2008. With regard to professional negligence and state securities fraud, the cause of action accrued when the conduct or advice was given, which at the latest was when the loan was made on March 27, 2008. Therefore, plaintiffs' causes of action became time barred as follows:

| | |
|---|---|
| Negligence | September 25, 2012 |
| Fraud | September 25, 2012 |
| Oral contract | September 25, 2012 |
| Written contract | September 25, 2013 |
| Professional Negligence | March 27, 2010 |
| State securities fraud | March 27, 2011 |

The cause of action for plaintiffs' federal securities fraud cause of action accrued when Henry defaulted on the loan on September 25, 2008, which means the latest the claim could expire, absent a later discovery of the violation, March 20, 2013. Even if the Court gave plaintiffs the benefit of the doubt and determined that they were not aware of the possible cause of action against defendant until attorney Rodenburg advised Nelson of the possible claim on January 26, 2011, the limitations period would have still expired two years later on January 26, 2013. *See* 28 U.S.C. § 1658(b)(1).

Plaintiffs filed this law suit on September 21, 2015. This was almost a full two years after the statute of limitations passed on the longest applicable statute of limitations.

Plaintiffs do not dispute this conclusion other than to assert that Iowa's ten-year statute of limitations for written contracts should apply to this case. (Doc. 54, at 6-7). Plaintiffs assert that the written contract consists of the "Power of Attorney" and "the original contract and note," apparently referring to the promissory note. (Doc. 54, at

23

7). First, the Court has found that Nebraska law applies, not Iowa law. In any event, the Court finds there is no written contract between plaintiffs and defendant. The promissory note was between plaintiffs and Henry; defendant was not a party to that document. The power of attorney authorized defendant to act on plaintiffs' behalf to pursue collection on the promissory note. There was no evidence of consideration given for this authorization, or any other indicia that would make it a contract. Finally, plaintiffs admitted that there has never been a written contract with defendant. (Doc. 41-3, at 90 (App. 86: Response to Request for Production of Documents No. 11); Doc. 41-4, at 77 (App. 166: Nelson Deposition at page 39)).

Accordingly, the Court finds plaintiffs causes of action, however labeled, are barred by the applicable statutes of limitations. That is not, however, the end of the analysis. Indeed, plaintiffs do not seriously dispute that the statutes of limitations would bar their claims; rather, they pin their hopes on the doctrine of equitable estoppel to toll the statutes of limitations. The Court will therefore next consider whether that doctrine saves plaintiffs' case, and concludes it does not.

### 3. *Equitable Estoppel Does Not Apply*

Equitable estoppel can toll the statute of limitations. In *Reifschneider v. Nebraska Methodist Hospital*, 447 N.W.2d 622 (Neb. 1989), the Nebraska Supreme Court described the elements of equitable estoppel:

> The elements of equitable estoppel are, as to the party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct

24

or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

*Reifschneider*, 447 N.W.2d at 627 (quotation omitted).    The Court finds equitable estoppel inapplicable in this case for several reasons.

First, plaintiffs have produced no evidence defendant made false representations or concealed material facts.    Second, to the extent that defendant made representations regarding his conversations with Henry and Henry's continued promises to make good on the loan, plaintiffs have made no showing that Henry did not, in fact, make such representations to defendant, or that defendant somehow knew the representations were false.    Third, defendant's conduct in suggesting that plaintiffs give Henry some time to make good on the loan did not cause prejudice to plaintiffs because plaintiffs were able to obtain a judgment against Henry.

Plaintiffs assert they have shown facts establishing a basis for equitable estoppel. Plaintiffs allege that two documents (the power of attorney and the informed consent in which Nelson acknowledged he could sue defendant) and "material facts" as alleged in paragraphs 31 through 42 of their Amended Complaint show "deception" and "run to the core of the fraudulent misrepresentation."    (Doc. 54, at 8).    Plaintiffs do not say exactly what those material facts are.    Plaintiffs go on to argue that the power of attorney "came with the implied understanding that Clarence Nelson was going to forebear action against Bitters if Bitters was truly intending to make Clarence Nelson whole."    (Doc. 54, at 8-9).    Plaintiffs conclude their argument that equitable estoppel applies by making conclusory assertions that "the violations are so egregious, the ingratiation to Clarence Nelson so great, and the fraudulent concealment by Bitters to deter Clarence Nelson and his lawyer Aaron Rodenburg from taking legal action against them when they sued John L. Henry in Douglas County, Nebraska instead."    (Doc. 54, at 9).

Plaintiffs argument fails for several reasons.   First, plaintiffs cannot simply point to the allegations they made in their Amended Complaint to defeat a motion for summary judgment.   As Local Rule 56(b) points out, plaintiffs were required to provide a statement of additional facts, with specific references to depositions, interrogatory answers and the like, that establish contested facts.   Plaintiffs did not file a statement of additional facts.   Plaintiffs' Amended Complaint is simply an allegation.   It is not evidence of anything.   "The very mission of the summary judgment procedure is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."   FED. R. CIV. P. 56 (Commentary to 1963 amendment to rule 56(e) of the Federal Rules of Civil Procedure).   Second, putting aside plaintiffs' conclusory, pejorative labels of "deception," "fraudulent concealment," "misrepresentations" and the like that pepper their Amended Complaint and brief, plaintiffs have failed to point to a single factual representation defendant made that they have shown to be false in any way. Plaintiffs have not shown that there is anything in the power of attorney or informed consent (neither which were even drafted by defendant) that is false or misleading. Plaintiffs want this Court to infer that defendant was untruthful when he stated that he was trying to help Nelson collect his debt from Henry and that his conduct was really a carefully crafted ruse to let the statute of limitations run out so that Nelson could not sue him.   Plaintiffs have provided no facts to support this inference.   Rather, it is pure speculation.

As previously noted, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts.   *Matsushita*, 475 U.S. at 587-88 (citation omitted).   But that is true only "as long as those facts are not so blatantly contradicted by the record … that no reasonable jury could believe them."   *Reed*, 561 F.3d at 790 (internal quotation marks and citation omitted).   Moreover, viewing the facts in the light most favorable to

26

the nonmoving party does not obligate the Court to accept speculation. *See Brown v. Fortner*, 518 F.3d 552, 558 (8th Cir. 2008) ("As with any summary judgment motion, while we are required to make all reasonable inferences in favor of the non-moving party, we do not resort to speculation.")

In summary, there is simply no genuine dispute as to any material fact that would establish a basis for equitable estoppel.

### 4. *Defendant's Professional Negligence Claims Fail for Want of an Expert*

As previously noted, at least the first two causes of action plaintiffs allege in their Amended Complaint state a claim for professional negligence, however captioned. Plaintiffs allege that defendant, acting in his capacity as a licensed financial advisor, negligently persuaded plaintiffs to loan money to Henry. To prevail on a professional negligence claim, a plaintiff must show a breach of the applicable standard of care.

As a general rule, this requires expert testimony. *See Bixenmann v. Dickinson, Land Surveyors, Inc.*, 882 N.W.2d 910, 916 (Neb. 2016) ("The general rule is that expert testimony is required to identify the applicable standard of care in professional negligence cases."). "Under the common knowledge exception, [however,] a party may make a prima facie case of professional negligence even without expert testimony in cases where the evidence and circumstances are such that the recognition of the alleged negligence may be presumed to be within the comprehension of laypersons." *Id.* The rule is the same under Iowa law. *See Kubik v. Burk*, 540 N.W.2d 60, 64 (Iowa App. 1995) (holding that expert testimony that a professional's conduct "is negligent is necessary unless proof is so clear a trial court can rule as a matter of law that the professional failed to meet an applicable standard or the conduct claimed to be negligent is so clear it can be recognized or inferred by a person who is not" a professional) (citation omitted).

27

Here, plaintiffs allege that defendant "should have known that an unsecured loan in the amount of $200,000 from Plaintiff Clarence G. Nelson, Jr. to John Henry was not an appropriate investment suitable for Plaintiffs." (Doc. 22, at 5: Amended Complaint, ¶ 27). Plaintiffs further allege that defendant "failed to exercise due diligence in vetting John Henry as a sound borrower on behalf of Plaintiffs . . .." (*Id.*, ¶ 28). Finally, plaintiffs assert that "the high risk was foreseeable by any reasonable investment advisor and that the standard of care by a reasonable investment advisor would have dictated that no one in the financial stature of Plaintiffs should hold a high risk investment as an unsecured personal loan with a stranger to that investor of most of the investor's life savings." (Doc. 22, at 10: Amended Complaint, ¶ 52). Whether defendant should have known this was an inappropriate investment, conducted adequate due diligence, and breached the standard of care owed by an investment advisor are not assessments that are so clear to be recognized or inferred by a person who is not in defendant's profession. Therefore, plaintiffs require an expert to prove these claims.

"Summary judgment may be appropriate in an instance in which expert testimony is required to establish negligence and expert testimony is unavailable, because there is then no genuine issue of fact which can be proved." *Kubik*, 540 N.W.2d at 64. *See also Dancy v. Hyster*, 127 F.3d 649, 654-55 (8th Cir. 1997) (affirming district court's granting of summary judgment after concluding that expert testimony was required to establish the standard of care and finding that plaintiffs could not provide expert testimony on the standard of care). Here, plaintiffs have failed to timely designate any experts to establish the standard of care of a financial advisor. The Court has twice denied plaintiffs request for designating experts out of time because plaintiffs have simply failed to make any showing of good cause or excusable neglect for why they have failed to designate an expert more than a year after filing their lawsuit alleging breach of the standard of care. Accordingly, even if plaintiffs' first two causes of action were not

barred by the statute of limitations, the Court would grant summary judgment on the first two causes of action for want of an expert to prove defendant violated a standard of care.

## VI.    CONCLUSION

The Court does not lightly grant summary judgment in this case.    It is clear that plaintiffs have tragically been deprived of their life savings because of a poor investment. Whether defendant bore any responsibility for that poor investment to the point that he should be held liable will never be determined because plaintiffs failed to pursue their claim against him, like they pursued their claim against Henry, in a timely manner. Although plaintiffs allege that they failed to pursue their claim because defendant misled them or lulled them into foregoing bringing suit against him, the Court can find no genuine issue of material fact that would support this allegation.

Therefore, for the reasons set forth herein, the Court:

(1) **Denies** plaintiffs' Motion for Leave of Court for Plaintiffs to Designate Experts Out of Time (Doc. 47);

(2) **Denies** plaintiffs' Motion to Dismiss Without Prejudice (Doc. 46); and

(3) **Grants** defendant's Motion for Summary Judgment (Doc. 41).    Plaintiffs' Amended Complaint is dismissed with prejudice and judgment shall issue in favor of defendant.

**IT IS SO ORDERED** this 24th day of January, 2017.


_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa